Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.B., and R.B.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>BLUECROSS BLUESHIELD of TEXAS and the AMERICAN HEART ASSOCIATION MANAGED HEALTHCARE PLAN.<br><br>　　　　Defendants. | COMPLAINT<br><br><br><br>Case No. 2:22-cv-00737 |

Plaintiffs S.B. and R.B., through their undersigned counsel, complain and allege against Defendants BlueCross BlueShield of Texas ("BCBSTX") and the American Heart Association Managed Healthcare Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. S.B. and R.B. are natural persons residing in Tarrant County, Texas. S.B. is R.B.'s stepfather.

1

2. BCBSTX is an independent licensee of the nationwide BlueCross and BlueShield network of providers, and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). S.B. was a participant in the Plan and R.B. was a beneficiary of the Plan at all relevant times. S.B. and R.B. continue to be participants and beneficiaries of the Plan.

4. R.B. received medical care and treatment at Solacium Sunrise ("Sunrise") beginning on June 29, 2021. Sunrise is a licensed and accredited residential treatment center, which provides sub-acute inpatient treatment to adolescent girls with mental health, behavioral, and/or substance abuse problems.

5. BCBSTX denied claims for payment of R.B.'s medical expenses in connection with her treatment at Sunrise.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBSTX does business in Utah through its network of affiliates, and the treatment at issue took place in Utah.

8. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs'

desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Sunrise

10. R.B. was admitted to Sunrise on June 29, 2021, to treat a variety of behavioral health conditions which included disruptive mood dysregulation disorder, generalized anxiety disorder, major depressive disorder, and borderline personality disorder.

11. BCBSTX denied payment for R.B.'s treatment, verbally stating denial was due to a lack of 24/7 nursing presence at Sunrise. BCBSTX was asked to provide this information in a written denial letter but refused to do so.

12. On December 16, 2021, S.B. submitted an appeal of the denial of payment for R.B.'s treatment. S.B. reminded BCBSTX that he was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers, which took into account all of the information he had provided, provided him with the specific reasons for the adverse determination, referenced the specific plan provisions on which the determination was based, and gave him the information necessary to perfect the claim.

13. He also asked that, in order to meaningfully respond to the points he raised in his appeal, that BCBSTX review the claim using a person knowledgeable about generally accepted standards and clinical best practices for residential programs in the State of Utah as well as MHPAEA.

14. In addition, S.B. requested to be provided with a physical copy of any and all documentation related to the review determination, including any internal case notes.

15. S.B. stated that BCBSTX's refusal to issue a written justification for its denial was not only a violation of BCBSTX's fiduciary duty, but also directly contradicted the language of the Plan document which stated that in the event a claim was denied, "you will receive a written notice from the Claim Administrator…" and while oral notice could be given for an urgent claim, even in those circumstances the policy still required that "a written notice is furnished to the claimant within three days of oral notification."

16. S.B. argued that R.B.'s treatment at Sunrise was a covered benefit under the terms of the Plan. He wrote that Sunrise was a licensed residential treatment provider which was also accredited by The Joint Commission. In addition, S.B. wrote that R.B.'s therapy was rendered by licensed clinical professionals.

17. He quoted the definition of residential treatment center for children and adolescents in the insurance policy, which states in full:

> **Residential Treatment Center for Children and Adolescents** means a child-care institution which is appropriately licensed and accredited by the Joint Commission on Accreditation of Healthcare Organizations or the American Association of Psychiatric Services for Children as a residential treatment center for the provisions of Mental Health Care and Serious Mental Illness services for emotionally disturbed children and adolescents (emphasis in original).

18. S.B. contended that Sunrise met all the Plan's requirements for coverage, and as the above definition mentioned nothing concerning a requirement of 24-hour onsite nursing, he could see no reason why BCBSTX would offer this as a basis for denying the claim.

19. S.B. included a copy of R.B.'s medical records with the appeal and argued that these showed her treatment at Sunrise was medically necessary.

20. S.B. further alleged that BCBSTX was applying treatment limitations which constituted a violation of MHPAEA. He wrote that MHPAEA compelled insurance plans to ensure that coverage for behavioral health conditions was offered at parity with coverage for analogous medical and surgical conditions.

21. S.B. identified skilled nursing, inpatient rehabilitation, and inpatient hospice as some of the medical or surgical analogues to the residential treatment R.B. received. He also pointed out that his Plan document stated that BCBSTX strived to be compliant with MHPAEA.

22. S.B. contended that BCBSTX violated MHPAEA through the disparate application of licensing and accreditation procedures. He also stated that BCBSTX did not require that any of the medical or surgical analogues to residential treatment have 24-hour onsite nursing to be approved, nor did most other mental health facilities. S.B. requested that BCBSTX perform a parity compliance analysis to ensure the Plan was being administered in accordance with MHPAEA.

23. He asked to be provided with physical copies of the results of this analysis as well as information concerning the development of the 24/7 nursing limitation, the specific Plan language discussing the limitation as well as any medical or surgical benefits to which this limitation applied, the evidentiary standards which led to the development of this

limitation, the methods and analysis used, and any evidence showing that this limitation was not applied more strictly to mental healthcare.

24. S.B. asked BCBSTX to specifically address all the allegations he raised in the appeals process, and in the event the denial was maintained to specifically identify, "why federal law does not apply to our daughter's case."

25. In the event the denial was upheld, S.B. also asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines used to evaluate the claim, along with their medical or surgical equivalents (whether or not these were used, in order to further evaluate the Plan's MHPAEA compliance), along with any reports or opinions about the claim from any physician or other professional, together with their names, qualifications, and denial rates (collectively the "Plan Documents").

26. In a letter dated January 12, 2022, BCBSTX upheld the denial of payment for R.B.'s treatment. The letter stated in pertinent part:

This is an appeal request by the member for coverage of residential treatment care from June 29, 2021-December 01, 2021. After review of the appeal request, claims and the member's benefit book, it has been determined no benefits are available. Per the member's Benefit booklet, the facility does not meet the definition of a residential treatment facility. Confirmation of 24-hour nursing presence and Medical Doctor (M.D.) access is required. …

Under section; "Definitions", in the member's benefit book:

"Residential Treatment Center means a facility setting (including a Residential Treatment Center for Children and Adolescents) offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service. It does not include half-way houses, wilderness

programs, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address longterm social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Substance Use Disorder. BCBSTX requires that any facility providing Mental Health Care and/or a Substance Use Disorder Treatment Center must be licensed in the state where it is located, or accredited by a national organization that is recognized by BCBSTX as set forth in its current credentialing policy, and otherwise meets all other credentialing requirements set forth in such policy.[1]

Residential Treatment Center for Children and Adolescents means a child-care institution which is appropriately licensed and accredited by the Joint Commission on Accreditation of Healthcare Organizations or the American Association of Psychiatric Services for Children as a residential treatment center for the provisions of Mental Health Care and Serious Mental Illness services for emotionally disturbed children and adolescents."

27. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

28. The denial of benefits for R.B.'s treatment was a breach of contract and caused S.B. to incur medical expenses that should have been paid by the Plan in an amount totaling over $330,000.

29. BCBSTX failed to produce a copy of the Plan Documents including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of S.B.'s request.

//

---

[1] While this appears to be an accurate representation of the definition of "Residential Treatment Center," it is important to note that BCBSTX omitted bolding from the original text which shows that the "Residential Treatment Center for Children and Adolescents" section is a distinct entry in the definitions section, and is not included in the text for "Residential Treatment Center" as this denial letter erroneously it makes it appear. This is an important distinction as the entry for "Residential treatment for Children and Adolescents" includes licensure and accreditation requirements but does not require 24 hour nursing presence or 24 hour medical availability. As Plaintiffs are not the drafting party for the insurance policy, any omissions, ambiguities, or errors, even if inadvertent, are to be interpreted in Plaintiffs' favor. In addition, R.B. was still a minor at the time this denial letter was drafted, meaning that the "Residential Treatment Center for Children and Adolescents" definition should have applied.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

30. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSTX, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

31. BCBSTX and the Plan failed to provide coverage for R.B.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

32. BCBSTX's 24/7 on-site nursing requirements are stricter than the terms of the Plan with regard to coverage for residential treatment involving children and adolescents. As such, denial of benefits by BCBSTX on that basis is a violation of the terms of the Plan.

33. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

34. The denial letters produced by BCBSTX do little to elucidate whether BCBSTX conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. BCBSTX failed to substantively respond to the issues presented in S.B.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

35. BCBSTX failed to refute Plaintiffs' assertion that coverage is available under the

insurance policy, in fact BCBSTX's own denial letter shows that its 24 hour nursing and M.D. presence requirements cited as the sole reasons for the denial of payment are not listed as requirements for a residential treatment center for children and adolescents.

36. BCBSTX and the agents of the Plan breached their fiduciary duties to R.B. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in R.B.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of R.B.'s claims.

37. The actions of BCBSTX and the Plan in failing to provide coverage for R.B.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

38. Plaintiffs contend that coverage is available under the plain terms of the insurance policy, but also that the 24/7 nursing and medical availability provisions imposed by BCBSTX violate MHPAEA.

39. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under both causes of action.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

40. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSTX's fiduciary duties.

41. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

42. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

43. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

44. The medical necessity criteria used by BCBSTX for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

45. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for R.B.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

46. When BCBSTX and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

47. BCBSTX and the Plan evaluated R.B.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice.

48. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

49. The Plan purports to rely on generally accepted standards of medical practice when it evaluates the medical necessity of covered benefits. Generally accepted standards of medical practice for residential treatment centers include policies such as regular meetings with a mental health professional and evidence-based treatment interventions.

50. Sunrise is a licensed treatment facility and provides treatment in a manner that complies with generally accepted standards of medical practice.

51. In addition, Sunrise is accredited by The Joint Commission.

52. Sunrise's licensure and accreditation demonstrate its commitment to excellence in healthcare and show that Sunrise has made the effort to go above and beyond other residential treatment facilities which are not both licensed and accredited.

53. Generally accepted standards of medical practice are largely codified and enforced by the appropriate licensing, regulatory, and accreditation entities. In the case of residential treatment for mental health and substance use disorders, no licensing, regulatory, or accreditation entities require 24-hour onsite nursing services as part of generally accepted standards of care.

54. Through its imposition of requirements which are stricter than those dictated by generally accepted standards of care as reflected in the licensing, regulatory, and accreditation entity requirements, BCBSTX violates MHPAEA.

55. BCBSTX violates MHPAEA because it relies on generally accepted standards of care and the standards of licensing, regulatory, and accreditation entities to develop its medical necessity guidelines for intermediate level medical or surgical facilities but holds residential treatment to a stricter standard beyond what is advised and considered appropriate by the relevant licensing, regulatory, and accreditation entities.

56. A parity violation can occur in this manner even under circumstances when the terms at issue are facially neutral, such as when plan documents require 24/7 onsite nursing care for both sub-acute inpatient mental health and medical/surgical facilities. The MHPAEA violation occurs in that situation because 24/7 onsite nursing care may be a part of generally accepted standards of care for intermediate level inpatient medical and surgical treatment but not fall within generally accepted standards of care for residential treatment facilities.

57. In this manner, the effect of imposing a facially neutral 24/7 onsite nursing requirement on residential treatment centers as well as on analogous level of care inpatient treatment facilities for medical and surgical care is to significantly limit access to coverage for intermediate level mental health and substance use disorder treatment compared to coverage for intermediate level medical and surgical treatment in a way that violates MHPAEA.

58. The Defendants' Plan puts individuals in need of residential treatment in the unenviable position of delaying care until an appropriate facility is found (if any such facility even

exists), all the while disregarding the medical opinions of their child's treatment team and placing their child's wellbeing in serious jeopardy or, alternatively, putting their child in the residential treatment they require but running the risk that BCBSTX will not pay due to an absence of 24 hour onsite nurses.

59. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSTX, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

60. BCBSTX and the Plan did not produce the Plan Documents S.B. requested and that were necessary to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that BCBSTX and the Plan were not in compliance with MHPAEA.

61. In fact, despite S.B.'s request that BCBSTX and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, BCBSTX and the Plan have not provided S.B. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, BCBSTX and the Plan have not provided S.B. with any information about the results of this analysis.

62. The violations of MHPAEA by BCBSTX and the Plan are breaches of fiduciary duty and give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

63. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

//

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for R.B.'s medically necessary treatment at Sunrise under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 30th day of November, 2022.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs


County of Plaintiffs' Residence:
Tarrant County, Texas.