THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| S.B. and R.B., <br><br> Plaintiffs, <br><br> v. <br><br> BLUECROSS BLUESHIELD of TEXAS and the AMERICAN HEART ASSOCIATION MANAGED HEALTHCARE PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART AMERICAN HEART ASSOCIATION'S MOTION TO DISMISS** <br><br> Case No. 4:22-CV-00091 <br><br> District Judge David Nuffer |

Plaintiffs S.B. and R.B. asserted claims against Defendants BlueCross BlueShield of Texas ("BCBSTX") and the American Heart Association Managed Healthcare Plan ("AHA") for recovery of benefits under the Employee Retirement Income Security Act ("ERISA").[1] AHA seeks dismissal of Plaintiffs' complaint arguing that Plaintiffs' claims are not plausible.[2] For Count I, AHA argues that Plaintiffs failed to plausibly claim that AHA breached the terms of the Plan because the Plan does not provide coverage for RTCs that lack 24-hour nursing services.[3] AHA also argues that Plaintiffs failed to sufficiently allege that Plaintiffs were prejudiced by a lack of full and fair review of their claim.[4] For Count II, AHA argues that Plaintiffs failed to plausibly plead a Parity Act claim.[5] Plaintiffs filed a Response in Opposition to the Motion to

---

[1] Complaint, docket no. 1, at 1-15, filed November 22, 2022.

[2] AHA's Motion to Dismiss, docket no. 18, at 6-21, filed February 17, 2023.

[3] AHA's Motion to Dismiss, at 7-11.

[4] AHA's Motion to Dismiss, at 11-12.

[5] AHA's Motion to Dismiss, at 12-19.

Dismiss.[6] BCBSTX and AHA filed a Joint Reply in support of the two separate Motions to Dismiss.[7] AHA also filed two supplemental briefs that argued for the dismissal of Plaintiffs' claims.[8]

Because Plaintiffs fail to: (1) plausibly claim that that AHA breached the terms of the Plan; and (2) sufficiently allege that they were prejudiced by a lack of full and fair review, AHA's Motion to Dismiss as to Count I is GRANTED. For Count II, Plaintiffs plausibly plead that AHA committed a Parity Act violation, and as result Defendants' Motion is DENIED for Count II.

**Table of Contents**

| | | |
|---|---|---:|
| A. | STATEMENT ON PREVIOUS ORDER | 3 |
| B. | BACKGROUND | 3 |
| C. | STANDARD OF REVIEW | 4 |
| D. | DISCUSSION | 5 |
| | 1. Plaintiffs failed to plausibly assert a claim that they are entitled to benefits under the terms of the Plan | 5 |
| | 2. Plaintiffs cannot recover benefits for a lack of full and fair review because the plan does not cover the claimed services | 8 |
| | 3. Plaintiffs Plausibly Plead a Parity Act Claim | 10 |
| | 4. AHA's supplemental authority does not establish that Plaintiffs' Parity Act claim should be dismissed | 13 |
| | 5. Plaintiffs' Parity Act Claim has a Nexus to the Defendants' Adverse Benefit Determination | 15 |
| ORDER | | 16 |

---

[6] Plaintiffs' Opposition, docket no. 25, filed March 31, 2023.

[7] Joint Reply, docket no. 27, filed April 28, 2023.

[8] AHA's First Joint Notice of Supplemental Authority, docket no. 28, at 1-6, filed December 21, 2023; AHA's Second Joint Notice of Supplemental Authority, docket no. 30, filed February 9, 2024; *M.P. v. BlueCross BlueShield of Illinois*, No. 2:23-CV-216-TC, 2023 WL 8481410 (D. Utah Dec. 7, 2023); *C.B. v. Blue Cross and Blue Shield of Illinois and Modolez Global Group Benefits Plan*, No. 23-cv-01206, 2024 WL 1003687 (N.D. Ill. Jan. 9. 2024).

### A.  STATEMENT ON PREVIOUS ORDER

On February 17, 2024, the Court entered an order[9] that granted BCBSTX's Motion to Dismiss[10] Plaintiffs' first claim that alleged that BCBSTX breached the terms of the Plan and denied BCBSTX's Motion to Dismiss Plaintiffs' second claim that alleged a breach of the Parity Act. Because the legal theories asserted by BCBSTX and AHA are very similar in their two separate Motions to Dismiss, the Court will use its analysis from its previous Order on BCBSTX's Motion to Dismiss for this order in Sections (D)(1)-(D)(4). However, the analysis in Section (D)(5) of this order was not included in the Court's previous order on BCBSTX's Motion to Dismiss.

### B.  BACKGROUND

Plaintiff R.B., together with her father, S.B., assert claims for: (1) recovery of more than $330,000 in benefits under ERISA; and (2) a violation of the Mental Health Parity and Addiction Equity Act ("Parity Act").[11]

S.B. is a participant of the American Heart Association Managed Healthcare Plan ("the Plan") and R.B. is a beneficiary of the Plan.[12] R.B. started treatment at Solacium Sunrise ("Sunrise") on June 29, 2021.[13] Sunrise is a licensed Residential Treatment Center ("RTC"), and it provides inpatient treatment to adolescent girls with mental health, behavioral, and substance abuse problems.[14] AHA's co-defendant, Blue Cross Blue Shield of Texas denied claims for

---

[9] Memorandum Decision and Order, docket no. 32, filed February 26, 2024.

[10] BCBSTX's Motion to Dismiss, docket no. 20, filed February 17, 2024.

[11] Complaint, docket no. 1, at 7-14.

[12] *Id.* at 1-2.

[13] *Id.* at 2.

[14] *Id.* at 2.

payment of R.B.'s medical expenses at Sunrise because the Plan requires RTCs to have 24-hour onsite nursing to be covered by the Plan.[15] Sunrise does not have 24-hour onsite nursing.[16]

Plaintiffs allege that their claim for benefits is covered by the Plan because the Plan has a separate definition for Residential Treatment Centers for Children and Adolescents that does not have the 24-hour onsite nursing requirement.[17]

The Plan defines RTC, in relevant part, as:

> **Residential Treatment Center** means a facility setting (including a Residential Treatment Center for Children and Adolescents) offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service. . . Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Substance Use Disorder.[18]

The Plan defines a Residential Treatment Center for Children and Adolescents as:

> **Residential Treatment Center for Children and Adolescents** means a child-care institution which is appropriately licensed and accredited by the Joint Commission on Accreditation of Healthcare Organizations or the American Association of Psychiatric Services for Children as a residential treatment center for the provisions of Mental Health Care and Serious Mental Illness services for emotionally disturbed children and adolescents.[19]

### C. STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[20] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[15] *Id*. at 7.

[16] *Id*. at 3, 5, 9.

[17] *Id*. at 4-5.

[18] *Id*. ¶26 at 6-7; Exhibit A, The Plan, docket no. 20-1, at 79 (emphasis in original).

[19] Complaint, ¶26 at 6-7; BCBSTX's Exhibit A, The Plan, docket no. 20-1, at 79 (emphasis in original).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citations omitted).

reasonable inference that the defendant is liable for the misconduct alleged."[21] "[A]ll well-pleaded factual allegations in [the] complaint [are accepted] as true, and . . . [are] view[ed] in the light most favorable to the [plaintiff]."[22]

And "[g]enerally, the sufficiency of a complaint must rest on its contents alone."[23] "However, the court may consider documents referred to in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[24] In this case, the Plan may properly be considered because it is central to Plaintiffs' claims and there is no dispute regarding its authenticity.

### D.  DISCUSSION

#### 1.  Plaintiffs failed to plausibly assert a claim that they are entitled to benefits under the terms of the Plan

AHA argues that Plaintiffs cannot recover benefits for treatment at Sunrise because the Plan does not provide coverage for Residential Treatment Centers that lack 24-hour nursing services.[25] Specifically, Sunrise did not have 24-hour onsite nursing as required to be a RTC that is covered by the terms of the Plan. In response, Plaintiffs argue their interpretation of the Plan does not need to be correct, but *merely plausible* at this stage of the litigation; and (2) this dispute should be resolved at the merits stage and not at the motion to dismiss stage.[26]

---

[21] *Id.* (citations omitted).

[22] *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 1:22-cv-00167-RJS-DAO, 2023 WL 4238454, at *2 (D. Utah June 28, 2023) (citing *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021)).

[23] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[24] *Total Quality Sys., Inc.*, 2023 WL 4238454, at *4 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[25] AHA's Motion to Dismiss, at 7-11.

[26] Plaintiff's Opposition, at 6.

"Courts review ERISA claims as they would any other contract claim by looking to the terms of the plan and other evidence of the parties' intent."[27] "If plan documents are reviewed and found not to be ambiguous, then they may be construed as a matter of law."[28] "Language is to be given its common and ordinary meaning as a reasonable person in the position of the [plan] participant . . . would have understood the words to mean."[29] "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term."[30]

Plaintiffs' interpretation of the Plan is not plausible because the Plan's plain language requires that all RTCs, including RTCs for Children and Adolescents, have 24-hour onsite nursing. Specifically, the Plan states:

> **Residential Treatment Center** means a facility setting (<u>including a Residential Treatment Center for Children and Adolescents</u>) offering a defined course of therapeutic intervention. . . . Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care[.][31]

Plaintiffs nevertheless argue that their interpretation of the Plan is "plausible" and the differing interpretations of the Plan constitute a disputed fact that is inappropriate to resolve at this stage of the litigation.[32] Plaintiffs are incorrect. "[T]he court need not accept as true factual allegations that are contradicted by documents that can be considered in relation to the motion to dismiss."[33] Plaintiffs' interpretation of the Plan is directly contradicted by the express terms of the Plan.[34]

---

[27] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1203 (10th Cir. 2013).

[28] *Id.*

[29] *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1212 (10th Cir. 2002).

[30] *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007).

[31] Complaint, ¶26 at 6-7 (emphasis added); Exhibit A, The Plan, docket no. 20-1, at 79 (emphasis added).

[32] Plaintiffs' Opposition, docket no. 26, at 5-6.

[33] *Matchett v. BSI Fin. Servs.*, 2:21-cv-211-DAK-CMR, 2021 WL 3473062, at *4 (D. Utah Aug. 6, 2021).

[34] Exhibit A, The Plan, docket no. 20-1, at 79.

The portion of the Plan's definition of Residential Treatment Center that includes "a Residential Treatment Center for Children and Adolescents" would be rendered meaningless under Plaintiffs' proposed interpretation. Additionally, the Plan's definition for RTCs for Children and Adolescents does not limit or modify the Plan's definition for RTCs.

In *J.W. v. BlueCross BlueShield of Texas*, the District of Utah granted a defendant's motion to dismiss in an ERISA case that dealt with a similar issue. In this case, the court found that the plaintiffs failed to plead facts that established that the two residential treatment centers plaintiff used were residential treatment centers as defined by the plan.[35] The court reasoned:

> The plan requires that a residential treatment center have 24 hour onsite nursing service. The complaint does not allege that either Evoke or Live Strong House meet this requirement. And during oral argument, Plaintiffs' counsel conceded that neither facility offers such service. It follows that neither Evoke nor Live Strong House qualifies as a residential treatment center under the terms of the plan.[36]

The District of Utah also granted a motion for judgment on the pleadings in a case where the relevant residential treatment center failed to meet an express condition of the plan.[37] In that case, the court concluded the plan:

> expressly and clearly excludes from coverage "[t]reatment in wilderness programs or similar programs" and therefore, Plaintiffs' claim for benefits for treatment at Open Sky Wilderness Therapy is expressly and clearly excluded from coverage.[38]

Similarly, in *M.P. v. BlueCross BlueShield of Illinois*, the Plan required Residential Treatment Centers to have "24 hour onsite nursing service for patients with Mental Illness and/or Substance Use Disorders[.]"[39] The Court concluded coverage was not available because the

---

[35] *J.W. v. BlueCross BlueShield of Texas*, 1:21-cv-21, 2022 WL 2905657, at *3 (D. Utah July 22, 2022).

[36] *Id*.

[37] *Roy C. v. Aetna Life Ins. Co.*, 2:17-cv-1216, 2018 WL 4511972 at *3 (D. Utah Sept. 20, 2018).

[38] *Id*. at *2 (citations omitted).

[39] 2023 WL 8481410 at *2 (D. Utah Dec. 7, 2023).

7

treatment facility "did not satisfy the Plan's unambiguous requirement of 24-hour onsite nursing care . . . and BCBS appropriately (under the Plan and ERISA) denied the Plaintiffs' claim."

These cases illustrate that courts may legitimately consider the plan's language when evaluating a complaint. Because Plaintiffs' interpretation of the Plan is directly contradicted by the express terms of the Plan, Plaintiffs failed to plausibly plead that BCBSTX breached the Plan. The express terms of the Plan establish that Sunrise is not an RTC under the Plan.

### 2. Plaintiffs cannot recover benefits for a lack of full and fair review because the plan does not cover the claimed services

Plaintiffs allege that Defendants breached their fiduciary duties to R.B. by failing to provide a full and fair review of the claim by: (1) failing to meaningfully address Plaintiffs' arguments during the appeal process; and (2) failing to provide Plaintiffs with relevant documents or a written denial.[40]

Administrators must "follow specific procedures for denials."[41] An administrator's denial must "be in writing and 'set forth the specific reasons for such denial,' and 'afford a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'"[42] "[G]enerally no substantive remedy is available for violation of the 'full and fair review' procedural requirement in 29 U.S.C. § 1133."[43] "The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of [a] decision

---

[40] Complaint, docket no. 1, ¶¶33, 34, 36 at 8-9; *see also* Plaintiffs' Opposition, at 6-7.

[41] *S.K. v. United Behavioral Health*, 2:18-cv-880-RJS-DBP, 2023 WL 7221013, at *24 (D. Utah Sept. 29, 2023).

[42] *Id*. at *24 (quoting *D.K. v. United Behavioral Health*, 67 F.4th 1224, 1236 (10th Cir. 2023)).

[43] *Chatterron v. IHC Health Plans, Inc.*, 2:05–CV–130 TC, 2006 WL 1073466, at *13 (D. Utah Apr. 20, 2006) (citing *Walter v. International Ass'n of Machinists Pension Fund,* 949 F.2d 310, 316 (10th Cir.1991)).

[under 29 U.S.C. § 1133] is to remand the case to the administrator for further findings or explanation."[44]

However, "courts can require a showing of prejudice due to an ERISA violation as a prerequisite to ordering a remand."[45] In *Brimer v. Life Ins. Co. of N.A.*, the Tenth Circuit Court of Appeals affirmed the district court's conclusion that the administrator violated ERISA's requirement of a full and fair review and also concluded that remand was unnecessary because the plaintiff "failed to show prejudice from [the administrator's] procedural violation of ERISA[.]"[46]

Plaintiffs' allegations are sufficient to plausibly plead a lack of full and fair review of the claim. But Plaintiffs do not and cannot sufficiently allege or explain how they were prejudiced by a lack of full and fair review. Plaintiffs acknowledge that BCBSTX verbally informed them that the claim was denied because Sunrise does not qualify as a RTC since the Plan required a 24-hour nursing presence.[47] Plaintiffs also concede that Sunrise lacks a 24-hour nursing presence.[48] And it has been determined that Plaintiffs cannot plausibly state a claim for benefits for breach of the Plan because Sunrise does not qualify as a RTC under the Plan.[49] Therefore, Plaintiffs cannot state a plausible claim for recovery of benefits or obtain a remand based on a lack of full and fair review.

---

[44] *Id*.

[45] *Brimer v. Life Ins. Co. of N.A.*, 462 Fed. App'x 804, 809 (10th Cir. 2012).

[46] *Id*. at 808-811.

[47] Complaint, docket no. 1, ¶11 at 3.

[48] *Id*. at ¶¶ 44, 46-47, 53-57, 59 at 10-13.

[49] *Supra*, Discussion at 5-7.

### 3. Plaintiffs Plausibly Plead a Parity Act Claim

Plaintiffs allege Defendants violated the Parity Act because the Plan requires RTCs to exceed Generally Accepted Standards of Care ("GASC") by having 24-hour onsite nursing, but the Plan does not require the same of comparable medical and surgical facilities ("SNFs").[50] In other words, Plaintiffs allege that Defendants violated 29 C.F.R. §2590.712(c)(4)(i) because the Plan required RTCs to exceed GASC, and the Plan did not require comparable medical and surgical facilities to exceed GASC. In response, AHA argues that: (1) Plaintiffs failed to plead a plausible Parity Act claim; and (2) Plaintiffs' Parity Act claim does not have a sufficient nexus to the adverse benefit determination.[51]

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[52] To be compliant with the Parity Act, a plan "must not impose more restrictive treatment limitations" on mental health benefits than medical or surgical benefits.[53] In other words, the Parity Act "prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently."[54]

A plaintiff must allege sufficient facts relating to four elements to state a plausible Parity Act violation: "(1) the [p]lan is subject to the Parity Act; (2) the [p]lan provides benefits for both mental health and medical/surgical treatments; (3) [d]efendants placed differing and more

---

[50] Complaint, docket no. 1, ¶¶ 40-63, at 9-15

[51] AHA's Motion to Dismiss, at 14-20.

[52] *L.C. v. Blue Cross & Blue Shield of Texas*, 2:21-cv-00319-DBB-JCB, 2023 WL 1930227, at *17 (D. Utah Feb. 10, 2023) (internal quotation marks omitted).

[53] *Jonathan Z. v. Oxford Health Plans*, 2:18-cv-00383-JNP-JCB, 2022 WL 2528362, at *17 (D. Utah July 7, 2022) (citing 29 U.S.C. § 1185a(a)(3)(A)).

[54] *Id*.

restrictive limitations on benefits for mental health care as compared to medical/surgical care; and (4) the mental health benefit being limited is of the same classification as the comparable medical/surgical benefit."[55] "There are two types of treatment limitations under the [Parity Act]—quantitative limitations and nonquantitative treatment limitations ("NQTLs")."[56] NQTLs "limit the scope or duration of benefits for treatment" and include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits provided[.]"[57] Additionally, 29 C.F.R. §2590.712(c)(4)(i) states:

> A group health plan . . . may not impose a [NQTL] . . . unless . . . any processes . . . used in applying the [NQTL] to mental health . . . benefits in the classification . . . are comparable to, and applied no more stringently than, the processes . . . used in applying the limitation with respect to medical/surgical benefits in the classification.[58]

Plaintiffs asserted a plausible Parity Act claim because they allege that AHA violated 29 C.F.R. §2590.712(c)(4)(i) by: (1) using GASC to create the requirements for intermediate levels of treatment for mental health and medical and surgical treatment; and (2) mandating that RTCs exceed GASC by having a 24-hour nursing requirement when AHA did not require comparable medical and surgical treatment centers to exceed GASC. In other words, Plaintiffs' claim is plausible because the GASC is a "process" under 29 C.F.R. §2590.712(c)(4)(i) that BCBSTX allegedly utilized to apply NQTLs more restrictively to mental health treatments than medical and surgical treatments.[59]

---

[55] *Id.*

[56] *L.C.*, 2023 WL 1930227, at *17.

[57] 29 C.F.R. § 2590.712(a)-(c).

[58] 29 C.F.R. §2590.712(c)(4)(i).

[59] 29 C.F.R. §2590.712(c)(4)(i) ("(i) *General rule.* A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes . . . used in applying the nonquantitative treatment limitation to mental health or substance use disorder

Defendants' Exhibit B, which contained the AACAP's GASC, was not considered for this Motion. Defendants argue Exhibit B should be considered because it shows: (1) AACAP's GASC recommend 24-hour onsite nursing for RTCs and, for this reason, Plaintiffs' Parity Act claim is not plausible; (2) AACAP's GASC are referred to in the Complaint, central to Plaintiffs' Parity Act Claim, and publicly available; and (3) Plaintiffs do not dispute that AACAP's GASC were used to create the Plan's requirements for RTCs.[60] Plaintiffs argue Exhibit B should *not* be considered because: (1) BCBSTX is improperly attempting to have the Court determine the merits of the case at the pleading stage; and (2) Plaintiffs have not yet determined if Exhibit B is authentic; whether it was effective for the dates of service; and whether other evidence is applicable.[61]

"[T]he court may consider documents referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[62] Exhibit B appears to be central to Plaintiffs' Parity Act claim, but it was not considered because Plaintiffs challenged Exhibit B's authenticity and Defendants did not provide any evidence that Exhibit B was used to create the Plan's NQTLs for intermediate treatment levels. Additionally, AACAP's GASC were *not* explicitly referred to in the Complaint as Defendants allege.[63] Instead, the Complaint referred to GASC, without specifying the year the standards were adopted or the sponsoring organization.[64]

---

benefits in the classification are comparable to, and are applied no more stringently than, the processes . . . used in applying the limitation with respect to medical/surgical benefits in the classification.").

[60] Defendants' Reply, docket no. 27, at 8.

[61] Plaintiffs' Response, docket no. 26, at 13.

[62] *Total Quality Sys.,* 2023 WL 4238454, at *4.

[63] Defendants' Reply, docket no. 27, at 8; Complaint, docket no. 1, at ¶¶13, 46-47, 49, 50, 53-56, at 4, 11-12.

[64] Complaint, docket no. 1, at ¶¶13, 46-47, 49, 50, 53-56, at 4, 11-12.

Even though Exhibit B was not considered for this Motion, it may yet prove dispositive of the Parity Act claim at a later stage. Exhibit B would disprove Plaintiffs' Parity Act claim if it was authentic and effective during the relevant time period. Exhibit B states RTC staffing should have:

> <u>A registered nurse with at least one year experience in mental health services or a mental health worker</u> (a person with bachelor's degree in psychology, sociology, social work, counseling, nursing education, rehabilitation counseling and at least one year of experience in mental health services) <u>should provide 24 hour developmentally sensitive child supervision, leisure and supportive care</u>. A person with a high school diploma and five years experience in mental health services may also be a supervisor but on no more than one shift per day.[65]

An authenticated Exhibit B would defeat Plaintiffs' Parity Act claim because Plaintiffs allege that the GASC do not recommend 24-hour onsite nursing for RTCs, whereas Exhibit B states the applicable GASC do in fact recommend 24-hour onsite nursing for RTCs.[66] In other words, an authenticated Exhibit B would establish that Defendants did not require RTCs to exceed the GASC because the applicable GASC recommended that RTCs have 24-hour onsite nursing.

### 4. AHA's supplemental authority does not establish that Plaintiffs' Parity Act claim should be dismissed

Defendants filed two supplemental briefs that argue that the dismissal of Plaintiffs' claims is warranted because two Courts rejected Parity Act claims in *M.P. v. BlueCross BlueShield of Illinois* and *C.B. v. Blue Cross and Blue Shield of Illinois*.[67] However, these cases are distinguishable from the case at bar.

---

[65] Generally Accepted Standards of Care, Exhibit B, docket no. 20-2, at 3 (emphasis added).

[66] Complaint, docket no. 1, ¶¶55-56, at 12; Plaintiffs' Response, docket no. 26, at 10; Generally Accepted Standards of Care, Exhibit B, docket no. 20-2, at 3.

[67] AHA's First Joint Notice of Supplemental Authority, docket no. 28, at 1-6, filed December 21, 2023; AHA's Second Joint Notice of Supplemental Authority, docket no. 30, filed February 9, 2024; *M.P. v. BlueCross BlueShield of Illinois*, No. 2:23-CV-216-TC, 2023 WL 8481410, at *3 (D. Utah Dec. 7, 2023); *C.B. v. Blue Cross and Blue Shield of Illinois and Modolez Global Group Benefits Plan*, No. 23-cv-01206, 2024 WL 1003687 (N.D. Ill. Jan. 9. 2024).

In *M.P.*, the plaintiffs argued that the Plan violated the Parity Act because the Plan's 24-hour nursing requirement imposed "more stringent or restrictive eligibility criteria on [RTCs] . . . [than] the Plan applies to analogous intermediate levels of medical or surgical benefits."[68] The plaintiffs in *M.P.* further reasoned: (1) no licensing authority requires RTCs to have nurses onsite or present 24 hours a day; (2) a 24-hour nursing requirement is stricter than the requirements dictated by generally accepted standards of care; and (3) the 24-hour nursing requirement is a Parity Act violation for RTCs because "24-hour nursing care is a part of the generally accepted standards of care for [SNFs], [but] it is neither expected nor required under the generally accepted standards of care for [RTCs][.]"[69]

The Parity Act argument in *M.P. v. BlueCross BlueShield of Illinois* is distinguishable from the Parity Act argument in this case. Plaintiffs here argue that a Parity Act violation occurred because: (1) the Plan used GASC to draft the Plan's treatment limitations; (2) the Plan requires RTCs to exceed GASC; (3) the Plan did not require comparable medical and surgical facilities to exceed GASC; and (4) the Plan violates 29 C.F.R §2590.712(c)(4)(i) because the process it used limits coverage for mental health treatment more stringently than medical and surgical treatment.[70] Plaintiffs' Parity Act claim asserts Defendants used a process more stringently on mental health treatment than the comparable level of medical and surgical treatments. In contrast, the plaintiffs' argument in *M.P. v. BlueCross BlueShield of Illinois* is a more generalized argument that a 24-hour nursing requirement for an RTC constitutes a Parity Act violation because a 24-hour nursing requirement is commonly used by GASCs for SNFs, but

---

[68] *M.P. v. BlueCross BlueShield of Illinois*, No. 2:23-CV-216-TC, 2023 WL 8481410, at *2 (D. Utah Dec. 7, 2023).
[69] *Id.* at *2.
[70] Complaint, docket no. 1, at ¶¶ 44, 48-49, 54-55, 59, at 10-13;  BSBSTX's Motion to Dismiss, docket no. 20, at 17-18; Plaintiffs' Response, docket no. 26, at 12; BSBSTX's Reply, docket no. 27, at 6-8.

14

not RTCs. The Parity Act arguments in *M.P. v. BlueCross BlueShield of Illinois* are distinguishable from the arguments in the case at bar.

The Parity Act argument that was dismissed by the Northern District of Illinois in *C.B. v. Blue Cross and Blue Shield of Illinois* is also distinguishable from the Parity Act argument in this case. In *C.B.*, the plaintiffs argued that the 24-onsite nursing limitation for RTCs constituted a Parity Act violation because it is "neither expected nor required for RTCs" and "the 24-hour onsite nursing requirement for RTCs violates nonquantitative limitations because it is a profound deviation from generally accepted standards of medical practice for residential treatment of care." The Parity Act claim in *C.B. v. Blue Cross and Blue Shield of Illinois* is materially different from the Parity Act claim asserted in this case. Specifically, the plaintiffs' argument in *C.B.* does not appear to be referring to the Plan using a process more stringently on mental health treatment than medical or surgical treatment.

The Parity Act arguments asserted in *M.P. v. BlueCross BlueShield of Illinois* and *C.B., v. Blue Cross and Blue Shield of Illinois* are dissimilar to the Parity Act argument in the case at bar, and these cases do not support the dismissal of Plaintiffs' Parity Act claim.

### 5.  Plaintiffs' Parity Act Claim has a Nexus to the Defendants' Adverse Benefit Determination

AHA argues Plaintiffs' Parity Act claim should be dismissed because Plaintiffs did not allege any nexus between the allege Parity Act violation and their specific claim.[71] AHA is mistaken. Plaintiffs' claim for approximately $330,000 in benefits under ERISA was denied by

---

[71] AHA and BCBSTX's Motions argued that Plaintiffs' Parity Act Claim should be dismissed because Plaintiffs' Complaint failed to allege a nexus between the Parity Act claim and the adverse benefit determination. AHA's Motion, at 14-15; BCBSTX's Motion, at 21-24. However, after Plaintiffs clarified their claim in their Opposition to the Motion to Dismiss, AHA and BCBSTX appeared to have abandoned this theory, and the Defendants did not mention this theory in their Joint Reply Brief. Joint Reply Brief, at 5-11. The Court will address the Defendants' nexus theory in this Section because Defendants never explicitly waived this claim.

Defendants because Plaintiffs' chosen treatment facility was not an RTC, as defined by the terms of the Plan, because it lacked 24-hour nursing services. Additionally, Plaintiffs' Parity Act claim has a nexus to this claim because the Parity Act claim alleges: (1) the Plan used GASC to draft the Plan's treatment limitations; (2) the Plan requires RTCs to exceed GASC; (3) the Plan did not require comparable medical and surgical facilities to exceed GASC; and (4) the 24-hour nursing requirement for RTCs is the provision in the Plan that caused RTCs to exceed GASC.[72] Plaintiffs pled a sufficient nexus between the adverse benefit determination and their Parity Act claim.

## ORDER

IT IS HEREBY ORDERED that AHA's Motion[73] is GRANTED IN PART and DENIED IN PART. Plaintiffs' Count I claims for recovery of benefits under 29 U.S.C. §1132(a)(1)(B) and lack of full and fair review are DISMISSED with prejudice. Plaintiffs' Count II Parity Act claim survives.

Signed May 1, 2024.

BY THE COURT

David Nuffer
United States District Judge

---

[72] Plaintiffs' Response, docket no. 26, at 10-11.

[73] AHA's Motion to Dismiss, docket no. 18, at 6-21, filed February 17, 2023.